# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

―――――――――――――――

№ 22-CV-2455 (EK) (RER)

―――――――――――――――

## WOODWAY USA, INC.

versus

## SPEEDFIT LLC AND AUREL A. ASTILEAN

―――――――――――――――

**REPORT & RECOMMENDATION**

February 2, 2023

―――――――――――――――

**TO THE HONORABLE ERIC R. KOMITEE**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Woodway USA, Inc. ("Woodway" or "Plaintiff") brought this action against Speedfit LLC ("Speedfit") and Aurel A. Astilean ("Astilean") (together "Defendants") alleging trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and breach of contract and unfair competition claims under New York law. (ECF No. 33 ("Compl.")).[1] Pending before the Court is Plaintiff's Motion for Default Judgment (ECF

---

[1] Plaintiff's initial filings in this case included a redacted complaint (ECF No. 1), placeholder "request[s] to file under seal" in lieu of certain accompanying exhibits (ECF Nos. 1-1, 1-3, 1-5), and a letter motion to redact the complaint and seal those exhibits (ECF No. 8). Your Honor denied Plaintiff's motion to seal, ordered Plaintiff to place the documents on the public docket, and invited Woodway to renew its motion to redact portions of the settlement agreement by making an additional showing consistent with the case law described in its memorandum and order. (ECF No. 26). Woodway subsequently renewed its motion to seal portions of the Complaint and accompanying exhibits (*see* ECF Nos. 27–28), which Your Honor granted. (Order dated 11/28/2022). Accordingly, redacted versions of the Complaint and placeholder exhibits appear on the docket at ECF No. 32, with unredacted versions of those documents appearing at ECF No. 33. (*See* ECF Nos. 32, 33). For ease of reference, the Court refers to these most recently filed versions of the Complaint.

1

No. 22 ("Mot. for Default J."), which Your Honor referred to me for a Report and Recommendation (Order dated 7/29/2022).

After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that Plaintiff's Motion for Default Judgment be denied. I further recommend that Woodway be ordered to show cause in writing why the notations of default should not be vacated and why this case should not be consolidated with *Speedfit LLC, et al. v. Woodway USA, Inc., et al.*, No. 22-CV-7993.

## BACKGROUND

I. Factual Background

A. The Parties and Their Litigation History

Woodway is a family-owned company incorporated and based in Wisconsin that manufactures and sells "fitness, health and rehabilitation equipment," including a line of self-propelled, non-motorized treadmills. (Compl. ¶¶ 6, 13–14). Woodway's "CURVE treadmills" have been offered in a variety of models and sizes for more than ten years, "complement Woodway's other lines of motorized and non-motorized treadmill and fitness products," and "are protected by various forms of intellectual property, including numerous patents and trademarks." (*Id.* ¶¶ 13–14). In particular, Woodway applied for federal registration of the CURVE mark for use with "exercise treadmills" in March 2009, has continuously used the CURVE mark to promote its treadmills since January 2010, and obtained a federal registration certificate for the CURVE mark on May 4, 2010. (*Id.* ¶¶ 36–39; *see also* ECF No. 33-4 ("Compl. Ex. D – USPTO Registration Certificate")).

Astilean is the sole managing member of Speedfit, a single member Delaware limited liability company that operates out of Astilean's residence in East Hampton, New York. (Compl. ¶¶ 7–8).[2]

---

[2] According to the Complaint, "Woodway is informed and believes Defendant Astilean is an individual residing in Suffolk County at 79 Newton Lane, East Hampton, New York 11937." (the "Newton Lane Address") (Compl. ¶ 7).

A competing exercise equipment company, Speedfit claims to have "engineered, designed, and built a first-of-its-kind leg-powered concave treadmill known as the 'Speedboard 2' or 'Curve,'" and claims on its website to be "the original designer and first developer of the Curve Treadmill holding more than 10 patents on the curve designed treadmills." (*Id.* ¶¶ 27, 32, 56 (internal quotation marks and citations omitted)).

In March 2013, Speedfit and Astilean filed suit against Woodway and its President, Douglas Bayerlein, alleging patent infringement and various state law claims in connection with the development and creation of the Curve manual treadmill. *See Speedfit LLC, et al. v. Woodway USA, Inc., et al.*, No. 13-CV-1276 (KAM) (AKT) (E.D.N.Y. Mar. 11, 2013) (the "First Action"). In February 2017, Speedfit filed a second suit against Woodway seeking corrections of inventorship with respect to certain treadmill-related patents held by Woodway. *See Speedfit LLC v. Woodway USA, Inc.*, No. 17-CV-768 (KAM) (AKT) (E.D.N.Y. Feb. 10, 2017) (the "Second Action," and together with the First Action, the "Prior Actions"); (*see also* Compl. ¶ 13). Following cross-motions for summary judgment in the First Action (*see* ECF No. 314, *Speedfit LLC, et al. v. Woodway USA, Inc., et al.*, No. 13-CV-1276 (KAM) (AKT) (E.D.N.Y. Jan. 9, 2020)), and on the eve of a bench trial before the Honorable Kiyo A. Matsumoto, the parties settled the Prior Actions on October 16, 2020. (Compl. ¶ 15; *see also* ECF No. 33-1 ("Settlement Agreement")).

---

Woodway further alleges that Speedfit's principal place of business is at the same address. (Compl. ¶ 8). However, the affidavits of service submitted with respect to Astilean indicate that he resides at a different address: 196 Buckskill Road, East Hampton, New York 11937 (the "Buckskill Road Address"). (ECF Nos. 14, 21, 30). Further complicating matters, the New York Department of State website lists the proper service address for Speedfit LLC as 323 Georgica Road, East Hampton, New York 11932. New York State Dep't of State, Div. of Corps., State Records & UCC, Corp. & Bus. Entity Database Searches, *Entity Information for Speedfit LLC*, https://apps.dos.ny.gov/publicInquiry/EntityListDisplay (last visited Feb. 1, 2023); *see also J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171 (AMD) (SJB), 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018) (citation omitted) ("The Court can and does take judicial notice of information from the New York Secretary of State's website.").

B.  The Settlement Agreement

In settling the Prior Actions, the parties contemplated a "'global and permanent settlement of any and all disputes, whether [then] ripe, speculative, or contemplated in the future, relating to manual, curved treadmills or business dealings relating thereto.'" (Compl. ¶ 16 (quoting Settlement Agreement at 1)). Accordingly, the parties agreed to mutual releases of "any and all presently-existing claims, demands, judgments, liens, damages, losses, liabilities, debts, or causes of action of any kind or character, known and unknown, asserted and unasserted . . . relating to the development, acquisition of patent rights, manufacture, promotion, or sale of manual, curved treadmills or business dealings relating thereto." (Settlement Agreement ¶¶ 8.01, 8.02 (Releases)). The parties further agreed to mutual and "perpetual covenant[s] not to sue for infringement of [one another's] patents," as identified in and defined by the Settlement Agreement, and agreed that they would not, "throughout the world, (i) challenge, or assist others in challenging, the validity or enforceability of [one another's defined] Patents, or (ii) otherwise, challenge, object to, interfere with, tarnish, denigrate, disparage, ridicule, dilute, demean, or otherwise materially adversely affect the image of [one another]." (*Id.* ¶¶ 2.01, 2.02 (Covenants Not to Sue); ¶ 6.02 (defining Woodway's obligations); ¶ 7.02 (defining Speedfit and Astilean's obligations); ¶ 1.03 (defining the "Speedfit Patents"); ¶ 1.04 (defining the "Woodway Patents"); *see also* Compl. ¶ 18).

As part of the Settlement Agreement, Woodway further agreed to "sell, convey, transfer, and assign to Speedfit, any and all right, title, and interest in and to US Design Patent D736866 [("the '866 Patent")], together with all rights of priority, reissues and re-examinations thereof . . . as well as all rights of enforcement and recovery for past infringement of the same[.]" (Settlement Agreement ¶ 3; *see also* Compl. ¶ 17). The Settlement Agreement provided for the assignment of the '866 Patent "AS IS," (*id.*), but did not "provide for any modification in Woodway's

4

inventorship of the '866 patent," and "Astilean was neither identified nor added as a co-inventor to the '866 patent." (Compl. ¶ 17). Pursuant to the Settlement Agreement, Speedfit granted Woodway and its affiliates "a perpetual, non-exclusive, fully paid-up, unlimited, worldwide license under [the '866 Patent] to make, have made, use, offer to sell, sell and import products which, but for the license granted . . . would infringe or be expected to infringe the claim of [the '866 patent]." (Settlement Agreement ¶ 4). In addition, the parties agreed to "cooperate and promptly execute any additional documents and take any other actions that are reasonably necessary to carry out the parties' obligations and intended results of this Settlement Agreement." (*Id.* ¶ 17).

The parties agreed that the specific terms of the Term Sheet and the Settlement Agreement would be kept "confidential" and would "not be disclosed by any party to any other person or entity without the written consent of the other parties, except as reasonably necessary to auditors or business agents having a need to know" who would "be obligated to maintain such information in confidence." (*Id.* ¶ 12.01). The Settlement Agreement also provided that "[t]he parties may agree to issue a mutually-agreeable press release, which discloses that the parties have agreed to settle this dispute in advance of trial, but makes no mention of the terms of the Term Sheet or this Settlement Agreement or suggests or implies that either party won or prevailed in the [Prior Actions]." (*Id.* ¶ 12.02).

The parties' broad mutual releases expressly carved out "any claims related to obligations and rights arising from the Term Sheet or this Settlement Agreement." (*Id.* ¶¶ 8.01, 8.02). In the event of a breach, the parties agreed that the "non-breaching party may immediately seek any and all appropriate remedies, both legal and equitable, in any court of competent jurisdiction," and "acknowledge[d] and agree[d] that breach of this agreement will cause irreparable harm and that

monetary damages alone would not be an adequate remedy." (*Id.* ¶ 14; *see also* Compl. ¶ 21). The parties also agreed that, in such an action, the Settlement Agreement would be interpreted according to New York law, the action would be brought in this District (Settlement Agreement ¶ 20; *see also* Compl. ¶ 23), and the prevailing party would be entitled to recover "reasonable attorneys' fees, costs, and expenses." (Settlement Agreement ¶ 11; *see also* Compl. ¶ 22).

C. The Parties' Litigation with Assault and the Alleged Breaches of the Settlement Agreement

On February 22, 2022, Speedfit filed a verified complaint in New York state court against another competing exercise equipment company, LifeCore Fitness, Inc. d/b/a Assault Fitness ("Assault"), asserting unjust enrichment and unfair trade practices claims under New York law based on allegations that Assault improperly reverse-engineered Speedfit's "Speedboard" treadmill (the "Speedfit-Assault Action"). (Compl. ¶¶ 2, 24–25; *see also* ECF No. 33-2 ("Speedfit-Assault Complaint") ¶¶ 24, 42–57). In particular, the verified complaint as amended alleges that Astilean and Speedfit "engineered, developed, and built [the Speedboard] from scratch," (Compl. ¶ 25 (quoting Speedfit-Assault Compl. ¶ 24), that the "Speedboard" treadmill is also known as the "Curve" (*id.* ¶¶ 27–29 (citing Speedfit-Assault Compl. ¶¶ 5, 30, 41; ECF No. 33-3 ("Speedfit-Assault Am. Compl.") ¶¶ 5, 30, 41)), that Woodway employees surreptitiously filed a patent application while building a metal production model of the Speedboard (*id.* ¶ 30 (citing Speedfit-Assault Am. Compl. ¶ 43)), and that "[a]fter Speedfit sued Woodway, as part of a settlement of that action, the Woodway Patent was assigned to Speedfit for all purposes." (*Id.* ¶ 31 (quoting Speedfit-Assault Am. Compl. ¶ 44)). On April 15, 2022, Assault removed the litigation to the Southern District of New York. (*Id.* ¶ 26 (citing *Speedfit LLC, et al. v. LifeCore Fitness, Inc., et al.*, No. 22 Civ. 3140 (NSR) (S.D.N.Y. Apr. 15, 2022)).

6

On April 11, 2022, Woodway likewise filed suit against Assault, alleging certain of Assault's manual treadmills infringe on a number of the Woodway Patents (the "Woodway-Assault Action"). (*Id.* ¶¶ 3, 33–35). As relevant here, Woodway alleges that the patents at issue in its suit against Assault "fall within the definition of 'Woodway Patents' in the Settlement Agreement" with Speedfit. (*Id.* ¶ 35). Soon after suing Assault, Woodway sent a notice of breach letter to Speedfit and Astilean alleging that Speedfit's verified complaint against Assault contains "falsehoods and mischaracterizations" which adversely affect the image and goodwill of Woodway, misrepresents the nature of the patent assignment provided in the Settlement Agreement, violates the confidentiality provisions of the Settlement Agreement, improperly suggests that Speedfit and Astilean prevailed in the Prior Actions, and "create[s] the misimpression that [Astilean] and Speedfit developed Woodway's line of CURVE treadmills." (ECF No. 33-5 ("Breach Notice Letter") at 1–2).

Four days later, on April 26, 2022, Speedfit filed a complaint in New York State court against Woodway asserting common law claims for breach of the Settlement Agreement, which was subsequently removed to the Southern District of New York. *See* ECF No. 1-1, *Speedfit LLC, et al. v. Woodway USA, Inc., et al.,* No. 22 Civ. 4733 (AKH) (S.D.N.Y. June 6, 2022) (the "SDNY Action").[3] In the SDNY Action, Speedfit and Astilean allege that "[t]he intention of the [Settlement Agreement] was for Speedfit to forego the more than $20,000,000 in damages which it sought in the [Prior Actions], and to which Speedfit was entitled, in exchange for its acquisition by assignment of the ['866] Patent, so that it could enforce the ['866] Patent against other

---

[3] The Court "may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 n.3 (2d Cir. 2012) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006)); *see also Zappin v. Comfort*, No. 18 Civ. 01693 (ALC) (OTW), 2022 WL 6241248, at *1 (S.D.N.Y. Aug. 29, 2022) ("[T]he Court has supplanted Plaintiff's account with facts drawn from documents from which the Court may take judicial notice, including pleadings, opinions and other court filings within this lawsuit and other related procedures."), *adopted by* 2022 WL 4592551 (Sept. 30, 2022).

infringing entities including [Assault]." (*Id.* ¶ 9). Speedfit and Astilean allege that, recognizing that the Settlement Agreement was "prepared, finalized, and executed in less than one day, . . . an insufficient period to prepare a comprehensive [Settlement Agreement]," the parties included the Cooperation Provision in the Settlement Agreement. (Settlement Agreement ¶ 17; SDNY Action ¶ 10). Later, once Speedfit realized that it could not enforce the '866 Patent without being named inventor, Speedfit and Astilean allegedly asked "that Woodway sign the necessary documents to add Astilean as an additional inventor." (SDNY Action ¶ 11). Speedfit and Astilean allege that Woodway refused to do so, thereby thwarting the "threshold intent of the [Settlement Agreement]" and resulting in a breach of the Cooperation Provision. (*Id.* ¶¶ 11–12). As a result, Speedfit and Astilean allege, "two major law firms Speedfit had intended to prosecute the ['866] Patent infringement lawsuits declined the representation, because there were defenses to any such lawsuits unless Astilean was named as an inventor." (*Id.* ¶ 13). Speedfit and Astilean further allege that Woodway's refusal constituted a "material breach" of the Settlement Agreement, which "precluded [Speedfit's and Astilean's] performance thereunder and negated the [Settlement Agreement]." (*Id.* ¶ 14).

II. Procedural Background

Shortly after filing its own suit against Assault and being named a defendant in the SDNY Action, Woodway commenced the current action on April 29, 2022, asserting claims against Speedfit and Astilean for (i) breach of contract; (ii) trademark infringement under 15 U.S.C. § 114(a); (iii) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); and (iv) unfair competition under New York law. (ECF No. 1; Compl. ¶¶ 40–75). Specifically, Woodway alleges that certain statements made in Speedfit's complaint against Assault and on its website misrepresent Speedfit's role in developing the Curve treadmill, violate specific provisions

8

of the Settlement Agreement, and infringe on the federally registered CURVE mark. (Compl. ¶¶ 2–5, 27–32, 40–69).

On April 29, 2022, the Clerk of the Court issued Woodway's proposed summons at the Newton Lane address, which Plaintiff listed in its Complaint as Astilean's residence and Speedfit's principal place of business. (ECF No. 4; *see also* Compl. ¶¶ 7–8). On May 2, 2022, Speedfit was served via the New York Secretary of State pursuant to Federal Rule of Civil Procedure 4(h) and N.Y. Limited Liability Co. Law § 303. (ECF No. 9). On May 9, 2022, Woodway proposed an alternative summons listing the Buckskill Road address for Astilean and Speedfit (ECF No. 12), which was promptly issued by the Clerk of the Court the following day. (ECF No. 13). Woodway thereafter served Astilean at the Buckskill Road address on May 11, 2022, by leaving copies of the summons and complaint with his wife and "co-resident," Violeta Astilean. (ECF No. 14).[4]

On June 7, 2022, shortly after the time to answer or otherwise respond to the Complaint expired for both Defendants, Woodway requested that the Court deem this case related to the Prior Actions and the SDNY Action, requested that the cases be reassigned to Judge Matsumoto, and alternatively requested that this case and the SDNY Action be consolidated and tried together. (ECF No. 15 at 1–2). Though neither Defendant had answered or appeared in this case, counsel for Speedfit and Astilean in the SDNY Action replied to that request, claiming that this "EDNY Action is a sham," stating Speedfit and Astilean's intent to seek remand in the SDNY Action, and requesting that the Court stay this action pending the disposition of Speedfit and Astilean's motion to remand in the Southern District. (ECF No. 16 at 2–4). Notably, counsel indicated in his reply

---

[4] The affidavit of service submitted in connection with service upon Astilean individually directs the reader to an "attached AFFIDAVIT OF REQUIRED MAILING(S) that completes service." (ECF No. 14). No such attachment can be found on the docket. Nevertheless, while New York law mandates that plaintiffs follow service upon a person of suitable age and discretion at the defendant's dwelling place or usual place of abode with supplemental service by mail, the Federal Rules of Civil Procedure impose no such mailing requirement. *Compare* N.Y. C.P.L.R. § 308(2) *with* Fed. R. Civ. P. 4(e)(2)(B). Accordingly, despite Plaintiff's failure to file the "attached affidavit of required mailing," service was properly effectuated under the Federal Rules.

9

that he does "not represent any party in the EDNY Action," and that the letter was "not an appearance on [his] behalf[;]" rather, the letter was "submitted only insofar as it involves directly the SDNY Action in which [he is] counsel of record." (ECF No. 16 at 3). Counsel further stated his belief that "defendants will appear in this action, if at all, *pro se*." (*Id.*).

Following that reply, and in light of Defendants' failure to appear or answer the Complaint, on June 9, 2022, Plaintiff requested that the Clerk of the Court enter default as to both Speedfit and Astilean. (ECF No. 17). Defendants' counsel in the SDNY Action filed another letter the next day to reiterate his clients' request for a stay, and to include within the scope of that request a stay of the entry of default. (ECF No. 18 at 1–2). On June 14, 2022, the Clerk of the Court entered notations of default. (ECF No. 19). On July 26, 2022, Your Honor denied Plaintiff's request to designate this case and the SDNY Action as related to the Prior Actions and denied Defendants' request to stay this action because Defendants had not yet officially appeared. (Order dated 07/26/2022).

On July 28, 2022, Plaintiff's filed the Motion for Default Judgment now before the Court (Mot. for Default J.), along with a Memorandum of Law (ECF No. 23 ("Pl.'s Mem.")), an attorney declaration (ECF No. 24 ("Marschean Decl.")), two exhibits (*see* ECF No. 24-1 ("Woodway-Assault Ans."); ECF No. 24-2 ("April 29, 2022 Counsel Correspondence")), and a proposed order on the Motion (ECF No. 25). Plaintiff served Speedfit with a copy of the Motion and corresponding papers via the New York Secretary of State (ECF No. 29) and served Astilean individually by leaving a copy with his adult son at the Buckskill Road Address and mailing a copy to the same address. (ECF No. 30).

On November 22, 2022, the Southern District of New York denied Speedfit's motion to remand and granted a motion by Woodway to transfer the SDNY Action to this District based on

10

the Settlement Agreement's forum selection clause. *See* ECF No. 36, *Speedfit LLC, et al. v. Woodway USA Inc., et al.*, No. 22 Civ. 4733 (CS) (S.D.N.Y. Nov. 22, 2022). On January 24, 2023, that case was opened in this District, and deemed related to this action. *See* ECF No. 39, *Speedfit LLC, et al. v. Woodway USA, Inc., et al.*, No. 22-CV-7993 (the SDNY Action will hereinafter be referred to as the "New EDNY Action").

## **LEGAL STANDARD**

Rule 55 establishes a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed R. Civ. P. 55(a). A plaintiff may then move for a default judgment against the defaulting defendant. Fed. R. Civ. P. 55(b)(2). "[T]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *Microsoft Corp. v. Does 1-2*, No. 20-CV-1217 (LDH) (RER), 2021 WL 4755518, at *3 (E.D.N.Y. May 28, 2021) (quoting *Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC) (PK), 2020 WL 1233943, at *2 (E.D.N.Y. Mar. 13, 2020)), *adopted by* 2021 WL 4260665 (Sept. 20, 2021).

The Second Circuit has noted that default judgment "must remain a weapon of last, rather than first, resort," *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 54 (E.D.N.Y. 2008) (quoting *Meehan v. Snow*, 652 F.2d 274, 277 (2d. Cir. 1981)), and has expressed an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Accordingly, "[a] party is not entitled to a default judgment as a matter of right simply because its adversary fails to answer or otherwise respond to a complaint." *Falls Lake Nat'l Ins. Co. v. DNA Plumbing Contractors, Inc.*, No. 20-CV-2798 (RJD) (RER), 2021 WL 3518279, at *3 (E.D.N.Y. May 4, 2021) (quoting *First Specialty Ins. Corp. v. Diontech Consulting, Inc.*, No. 10-CV-2559 (CBA)

11

(RER), 2012 WL 748619, at *3 (E.D.N.Y. Mar. 7, 2012)), *adopted by* 2021 WL 2702571 (July 1, 2021).

## DISCUSSION

I. <u>Plaintiff's Failure to Comply with Local Civil Rule 55.2 Warrants Denial of the Motion</u>

A motion for default judgment may be denied if the movant fails to follow all applicable procedural rules. *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474 (ENV) (PK), 2017 WL 9989598, at *1 (E.D.N.Y. Nov. 21, 2017); *see also Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008) ("Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."). Indeed, "courts in the Eastern and Southern Districts regularly deny [default judgment] motions when strict procedural compliance is lacking." *United States v. Hamilton*, No. 18-CV-2011 (ADS) (SIL), 2019 WL 6830318, at *2 (E.D.N.Y. Nov. 26, 2019), *adopted by* 2019 WL 6828276 (Dec. 13, 2019).

A. <u>Local Rule 55.2(b)</u>

As an initial matter, Local Rule 55.2(b) requires a party seeking default judgment to "append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civ. R. 55.2(b); *see also Liberty Mut. Fire Ins. Co. v. CitiMortgage, Inc.*, No. 20-CV-5839 (EK) (RER), 2022 WL 5424790, at *3 (E.D.N.Y. July 21, 2022) (denying default judgment in part for failure to append a proposed form of default judgment), *adopted by* 2022 WL 4483396 (Sept. 27, 2022); *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) (denying motion for default judgment for, *inter alia*, plaintiff's failure to submit copy of Clerk's certificate of default); *Century Sur. Co. v. Atweek, Inc.*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018) (noting that "[a] motion for default judgment will

not be granted unless the party making the motion adheres to all of the applicable procedural rules"). "The fact that some of these items may be found electronically, scattered on the docket, does not absolve a movants of the obligation to collect and append copies to the moving papers." *Bhagwat*, 2015 WL 13738456, at *1 (collecting cases).

Plaintiff failed to append a copy of the Clerk's certificate of default and a copy of the claim to which no response had been made, and separately filed a proposed form of default judgment as an attachment to a letter to Your Honor. (ECF No. 25). Although these items may be found on the docket, Plaintiff has not satisfied its obligation to append copies to the moving papers. *See, e.g.*, *Yoon v. Toothsavers Dental Lab'y, Inc.*, No. 19-CV-2283 (ERK) (VMS), 2020 WL 13580466, at *8 (E.D.N.Y. June 22, 2020) ("It is not enough that the complaint or Clerk's certificate of default can be found interspersed throughout the docket."). Accordingly, Woodway's Motion does not comply with Local Rule 55.2(b).

B. Local Rule 55.2(c)

Local Rule 55.2(c) requires that "all papers submitted to the Court pursuant to Local Civil Rule [55.2(b)] shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual). Proof of such mailing shall be filed with the Court." Loc. Civ. R. 55.2(c). Courts in this District "strictly construe[]" these requirements, and have found that a movant's "failure to comply with Local Rule 55.2(c) warrants denial of the motion for default judgment." *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019) (alteration omitted) (quoting *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB), 2019 WL 1450746, at *7 (E.D.N.Y. Jan. 28, 2019) (denying default judgment, in part, because plaintiff served motion for default judgment at individual

13

defendants' business address, instead of residential addresses), *adopted by* 2021 WL 4129151 (Aug. 10, 2021)); *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465 (AMD) (SJB), 2019 WL 1177854, at *4 (E.D.N.Y. Feb. 21, 2019) (denying default judgment where corporate defendant was served with motion papers at an address different from the address listed as its principal place of business in the amended complaint, and where lack of clarity as to whether the corporate defendant was served the motion papers by mail to its last known business address), *adopted by* 2019 WL 1172381 (Mar. 13, 2019); *Augustin v. Apex Fin. Mgmt.*, No. 14-CV-182 (CBA) (VMS), 2015 WL 5657368, at *3 (E.D.N.Y. July 27, 2015) (denying default judgment when it was unclear whether motion papers were mailed to corporate defendant at their last known business address) (collecting cases), *adopted by* 2015 WL 7430008 (Nov. 23, 2015). Proper "[s]ervice of the motion on non-appearing defendants is of particular importance, because 'mailing notice of such an application is conducive to both fairness and efficiency.'" *Miss Jones, LLC*, 2019 WL 926670, at *4 (quoting Committee Note, Loc. Civ. R. 55.2; citing *Transatlantic Auto Grp., Inc. v. Unitrans-PRA Co.*, No. 08-CV-5070 (DLI), 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011)), *adopted by* 2019 WL 955279 (Feb. 26, 2019)).

On August 11, 2022, Plaintiff served the Motion and accompanying documents by personal delivery to Astilean's adult son at the Buckskill Road Address, and by mailing the documents to the same address, which the affidavit indicates is "the last known residence, usual place of abode of the Defendant(s)." (ECF No. 30). Accordingly, Plaintiff has submitted sufficient proof of mailing pursuant to Local Rule 55.2(c) with respect to Astilean. However, Plaintiff's proof of service of the Motion upon Speedfit via the Secretary of State (ECF No. 29) contains no indication that the motion papers were mailed to any address, let alone Speedfit's last known business address. That Woodway's complaint, the affidavits of service, and the Secretary of State's website

14

offer multiple and conflicting addresses for Speedfit's place of business causes additional confusion regarding the proper place of mailing in order to demonstrate compliance with Local Rule 55.2(c). *See, e.g.*, *Allstate Ins. Co.*, 2019 WL 1177854, at *4; *Augustin*, 2015 WL 5657368, at *3. Therefore, Woodway has not complied with Local Rule 55.2(c).

*** 

Accordingly, Plaintiff's "'[f]ailure to comply with Local Rule 55.2 warrants denial of the motion for default judgment.'" *Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar, LLC*, No. 21-CV-6909 (AMD) (RER), 2022 WL 18151927, at *10 (E.D.N.Y. Dec. 14, 2022), *adopted by* 2023 WL 130835 (Jan. 9, 2023) (quoting *Allstate Ins. Co.*, 2019 WL 1177854, at *3).

II. The *Enron* Factors Weigh in Favor of Denial of the Motion

When determining whether to grant a default judgment, courts are also "guided by the same factors which apply to a motion to set aside entry of a default." *Krevat v. Burgers to Go, Inc.,* No. 13-CV-6258 (JS) (AKT), 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96). "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id*. (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013)).

A. Willfulness

Generally, "[d]efendant's failure to appear, failure to respond to the Complaint, and failure to respond to the instant motion sufficiently demonstrate willfulness." *Id*. at *5. Further, actual notice

15

of a lawsuit is a key consideration in determining whether a defendant's default was willful. *See, e.g.*, *Guggenheim Cap., LLC*, 722 F.3d at 455 (finding willful default where defendant did "not deny that he received the complaint, the court's orders, or the notice of default judgment, or that he never answered the complaint"). As noted above, Plaintiff submitted an affidavit of service to the Clerk of Court demonstrating that the summons and Complaint were served on Speedfit via the New York Secretary of State pursuant to Federal Rule of Civil Procedure 4(h) and N.Y. Limited Liability Co. Law § 303 at its principal place of business (ECF No. 9) and personally served on Astilean at his last known residence (ECF No. 14).

Defendants have not answered or otherwise responded to the Complaint, nor have Defendants requested an extension of time to respond. However, Defendants' counsel in the SDNY Action has filed two letters on the docket (ECF Nos. 16, 18). While these letters do not constitute appearances or an adequate response, they could conceivably demonstrate Defendants' attempt to set forth its position in response to Plaintiff's filings, and therefore its lack of willfulness. Willfulness of Defendants' default here is further complicated by the existence of the New EDNY Action, which is in direct tension with Plaintiff's breach of contract claim in this case. (*See* New EDNY Action ¶¶ 12–17, 23, 24–29). In any event, the Court finds that Defendants' default here was willful considering Defendants' apparent notice and lack of formal response to the Complaint or Motion for Default Judgment. Nevertheless, the other *Enron* factors weigh in favor of denial of the Motion.

B.  Meritorious Defense

"Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Ltd.*, 374 F.3d 158, 167 (2d Cir. 2004) (quoting *Enron Oil*, 10 F.3d at 98). As a general matter, where defendants have not

16

responded to the complaint (*i.e.*, have not submitted any evidence of a defense), the court cannot determine whether defendants have a meritorious defense to plaintiff's claims, "which [] weighs in favor of granting a default judgment." *See Krevat*, 2014 WL 4638844, at *6 (citing *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds*, 2013 WL 4042357, at *2).

While the Complaint is technically uncontested in this action, in the New EDNY Action, Defendants have alleged that Plaintiff breached the same Settlement Agreement that is at issue here. (*See* New EDNY Action ¶¶ 12–17, 23, 24–29). If proven at trial, Plaintiff's alleged inadequate performance under the Settlement Agreement may constitute a complete defense against Plaintiff's breach of contract claim. In fact, Speedfit and Astilean contemplate such a defense in paragraph 23 of the New EDNY Action, stating that "[s]ince Woodway breached the [Settlement Agreement] on or about February 25, 2021, it is precluded from stating a *prima facie* case for breach of [c]ontract, which requires proof that Woodway itself performed under the [c]ontract, which clearly it did not." (New EDNY Action ¶¶ 23). The letters filed by Defendants' counsel in this action similarly raise Woodway's alleged breach of the Settlement Agreement. (*See* ECF Nos. 16, 18) ("The [SDNY Action] is a complete defense to the EDNY Action since defendants cannot prove that they performed under the Contract; they did not."). Notably, the New EDNY Action is pending before this Court. Therefore, in light of the unique circumstances of this case in which Defendants' meritorious defense has been raised primarily through a related litigation, this factor weighs in Defendants' favor.

C. <u>Prejudice</u>

Finally, the Court considers whether the non-defaulting party would be prejudiced if the Motion for Default Judgment were to be denied. A party is prejudiced when its "ability to proceed

17

[with its] case is impaired." *Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (ARR) (RER), 2007 WL 608151 at *4 (E.D.N.Y. Jan. 31, 2007), *adopted by* 2007 WL 608151 (Feb. 23, 2007). Plaintiffs must show that delay would prevent recovery or would "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 388 (S.D.N.Y. 2013) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).

Woodway alleges that "[u]nless Defendants are immediately and permanently enjoined from breaching the Settlement Agreement, Woodway's reputation will continue to suffer and Woodway's claims of patent infringement against Assault and other third-party infringers of Woodway's Patents are impacted." (Compl. ¶ 4). However, Plaintiffs have not shown that such delay would prevent recovery or would "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Glob. Gold Mining, LLC*, 983 F. Supp. 2d at 388 (quoting *Davis*, 713 F.2d at 916); *see also U.S. v. Chesir*, 862 F. Supp. 2d 286, 292 (E.D.N.Y. 2012) (citing *New York v. Green*, 420 F.3d 9, 110 (2d Cir. 2005) (delay alone is not sufficient to establish prejudice). Therefore, this factor likewise weighs in Defendants' favor.

\*\*\*

On balance, the Court finds that the *Enron* factors weigh in Defendants' favor. As such, I respectfully recommend that the Court deny Plaintiff's Motion for Default Judgment.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiff's Motion for Default Judgment be denied. I further recommend that Woodway be ordered to show cause in writing why the notations of default should not be vacated and why this case should not be consolidated with *Speedfit LLC, et al. v. Woodway USA, Inc., et al.*, No. 22-CV-7993.

18

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric R. Komitee within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: February 2, 2023
Brooklyn, NY

19